# EXHIBIT A

JASON R. HULL [11202]
JHULL@MOHTRIAL.COM
TREVOR C. LANG [14232]
TLANG@MOHTRIAL.COM
**MARSHALL OLSON & HULL, PC**
NEWHOUSE BUILDING
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655

J. GERARD STRANCH, IV
[PRO HAC VICE FORTHCOMING]
GERARDS@BSJFIRM.COM
**BRANSTETTER, STRANCH & JENNINGS PLLC**
223 ROSA L. PARKS A VENUE, SUITE 200
NASHVILLE, TENNESSEE 37203
TELEPHONE: 615.254.8801

ATTORNEYS FOR PLAINTIFF AND
PROPOSED CLASS COUNSEL

> **IF YOU DO NOT RESPOND TO THIS DOCUMENT WITHIN APPLICABLE TIME LIMITS, JUDGMENT COULD BE ENTERED AGAINST YOU AS REQUESTED.**

LYNN TOOPS
LTOOPS@COHENANDMALAD.COM
VESS MILLER
VMILLER@COHENANDMALAD.COM
NATALIE LYONS
NLYONS@COHENANDMALAD.COM
TYLER EWIGLEBEN
TEWIGLEBEN@COHENANDMALAD.COM
[PRO HAC VICE FORTHCOMING]
**COHEN & MALAD, LLP**
ONE INDIANA SQUARE, SUITE 1400
INDIANAPOLIS, IN 46204
TELEPHONE: 317.636.6481

## IN THE THIRD JUDICIAL DISTRICT COURT FOR
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| FRITS VAN DER HOEK, an individual and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLY BANK and BETTER MORTGAGE, CORP,<br><br>Defendant. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>—TIER 3—<br><br>Civil No.  210902163<br><br>Judge James Gardner |

Plaintiff Frits van der Hoek, by counsel, brings this Class Action Complaint against Defendants, Ally Bank ("Ally") and Better Mortgage Corporation ("Better Mortgage") (together "Defendants") both for himself and on behalf of others similarly situated, and alleges as follows:

## INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution, injunctive, and declarative relief from Ally Bank and Better Mortgage.  Defendants promised home loan applicants that if the applicants paid a required "Appraisal Fee" up front, Defendants would "refund the difference" between the Appraisal Fee the applicant paid and the actual cost of the appraisal. But Defendants have uniformly not "refund[ed] the difference" between the Appraisal Fee and the cost of the appraisal.  Instead, Defendants have engaged in an undisclosed practice of deducting from applicants' up front "Appraisal Fee" both (a) the actual cost of the home appraisal (which Defendants were entitled to deduct) *and* (b) an additional undisclosed "Management Fee" (which Defendants were never entitled to deduct and which applicants did not agree to pay). Defendants would then refund only this lower amount, making it appear as though they had "refund[ed] the difference" between the Appraisal Fee and the costs of the appraisal, while never disclosing the additional hidden "Management Fee" deducted from the refund amount. These practices breach Defendants' promise to pay solely for the cost of the required lender appraisal and refund the difference between that cost and the amount of the "Appraisal Fee" paid by the applicant.

2.      Defendants incentivize applicants to act quick and pay the "Appraisal Fee," by offering the quoted fee as a carrot to "lock in" the mortgage rate—often before the application is finalized. But while Defendants name it the "Appraisal Fee" and tell applicants that, "[i]f the appraisal costs less than [the quoted amount], we'll refund the difference," Defendants hide that they are charging additional costs (the "Management Fee") to the applicant before issuing the refund.  And thus, they do not "refund the difference" between the paid "Appraisal Fee" and the

cost of the appraisal. Rather, they issue a refund for the difference between the paid fee and a sum that includes hidden costs never disclosed to or contracted for by the applicant. This deceptive conduct likewise violates Defendants' implied covenant of good faith and fair dealing and the Utah Consumer Sales Practices Act by misrepresenting to applicants that they are paying an "Appraisal Fee" for the property appraisal while hiding that applicants are paying for additional undisclosed costs in the form of a "Management Fee."

## PARTIES

3.     Plaintiff is a citizen and resident of Lawton, Comanche County, Oklahoma.

4.     Ally Bank is a bank with its headquarters in Salt Lake County, Utah. Ally Bank has over $172 billion in assets and is one of the largest banks in the United States with approximately two million depositors. Among other things, Ally Bank is engaged in the business of mortgage lending to consumers like Plaintiff and members of the putative class.

5.     Better Mortgage is an online mortgage lender with its headquarters in New York, New York. Better Mortgage is engaged in the business of providing mortgage loan services to consumers, including Plaintiff and members of the putative class.

6.     Better Mortgage maintains a registered agent in Midvale, Utah.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this putative class action pursuant to Utah Code § 78A-5-102(1).

8.     Pursuant to Utah Code § 78B-3-304(2), venue is proper in this court because Defendant Ally Bank resides in Salt Lake County and Defendant Better Mortgage maintains a registered agent in Salt Lake County.

3

## FACTUAL BACKGROUND

### A. Defendants' Mortgage Application Process

9.      Defendants, Ally Bank and Better Mortgage, partner to provide online mortgage lending and servicing to customers in Utah and across the country. In April 2019, Ally Financial Inc. ("Ally Finance"), the parent of Ally Bank, announced this partnership with Better Mortgage "to create a new end-to-end digital experience for consumers looking for a mortgage loan from Ally." https://media.ally.com/2019-04-18-Ally-Financial-Partners-with-Better-com-to-Create-End-to-End-Digital-Mortgage-Experience. Coinciding with this partnership, Ally Finance increased its financial investment in and "overall ownership" of Better Mortgage. *Id.*

10.      Mortgage loans are "sourced by existing Ally customer marketing, prospect marketing on third-party websites, and email or direct mail campaigns." Ally Finance, Form 10K, U.S. Securities and Exchange Commission (fiscal year ending Dec. 31, 2020), https://www.sec.gov/ix?doc=/Archives/edgar/data/40729/000004072921000008/ally-20201231.htm#icabb285cba1e4e7a9b3b05143668c00a_55. And Better Mortgage "conducts the sales, processing, underwriting, and closing for Ally's digital mortgage offerings . . . while Ally retains control of all the marketing and advertising strategies and loan pricing." *Id.*

11.      In 2020, Ally Finance and Better Mortgage originated $4.7 billion in mortgage loans. *Id.*

### i.   Mortgage Pre-Approval

12.      To apply for a mortgage, customers start at Ally Bank's website, which offers a mortgage application process that "can be completed 100% online anytime, anywhere." https://www.ally.com/home-loans/mortgage/. Ally Bank emphasizes: "We've pressed fast forward

4

on loan applications." *Id.* It further states that customers can be preapproved for a mortgage "in

as little as 3 minutes" with a closing date that's "up to 10 days faster than the industry average."

*Id.*

13.     Customers can go to Ally Bank's website and click on a prominent button titled

"Get Pre-approved":



14.     Ally Bank then prompts the customer with user-friendly questions to provide

information about where they are in the process (*e.g.*, "I'm just researching," "I'm making offers,"

etc.) and what the customer would like from Ally Bank (*e.g.*, provide a "pre-approval letter," let

the customer know "how much [he] can afford," etc.).

15.     Once Ally Bank has sufficient information from the customer, it tells him that it

needs to do a "soft credit check." The customer is prompted to provide personal information (*e.g.*,

name, current address, phone, the last four digits of the customer's social security number), agree

to Ally Bank's "Consent to Receive Electronic Loan Documents," acknowledge Ally Bank's Terms of Use, and authorize the credit check.

16.    After a customer has passed the credit check, Ally Bank asks for additional information, including the customer's income, the persons on the property title, other property ownership, and financial assets.

17.    Then, the customer is directed to a page that states, "Based on that information, you may be able to afford up to" a specified amount, followed by prompts for the consumer to fill in his "target home price" and "preferred down payment" amounts.

18.    If the customer is pre-approved, he is directed to a page stating, "You're pre-approved!"

**ii.    Agreement with Customer to "refund the difference" between the upfront "Appraisal Fee" and the cost of the home appraisal**

19.    Once the customer has been preapproved by Defendants for a mortgage, the customer is directed to an "Overview" page containing information regarding that customer's loan, including form documents that have been generated for the customer.

20.    One of the form documents that is made available to the pre-approved customer is the Home Loan Estimate. Lenders like Ally Bank and Better Mortgage are required under federal law, 12 C.F.R. §§ 1026.2(a)(3)(ii), 1026.19(e)(1)(iii)(A), to provide the Loan Estimate to applicants within three days after the customer has provided his name, income and social security number, as well as the property address, its estimated value and the desired loan amount.[1]

---

[1] Consumer Financial Protection Bureau. *What information do I have to provide a lender in order to receive a Loan Estimate?* (Mar. 3, 2017), https://www.consumerfinance.gov/ask-cfpb/what-information-do-i-have-to-provide-a-lender-in-order-to-receive-a-loan-estimate-en-1987/.

21.     Ally Bank's website describes the Loan Estimate as "a standardized document that details the features, costs, and risks associated with your mortgage. . . . The Loan Estimate also gives you information about closing costs, property taxes, third-party fees, homeowners' insurance costs, and any features, like prepayment penalties, that are unique to that mortgage loan." https://www.ally.com/do-it-right/home/what-is-a-home-loan-estimate/.

22.     On each customer's "Overview" page of Ally Bank's website, there is a link to the "Loan Estimate" webpage. On that page, the customer can view a copy of the Loan Estimate, with annotations by Ally Bank, providing explanatory information about specific sections of the Estimate. Customers can also download a .pdf copy of the Loan Estimate on that page.

23.     As stated on a customer's Loan Estimate web page, the Loan Estimate is where Defendants provide "the full breakdown of [an applicant's] loan costs":

> Your Loan Estimate .
>
> ## Let's dive into your loan costs
>
> Here's where you can see the full breakdown of your loan costs . Your rate may have changed since creating this so check the rates page to see up-to-date options and update this estimate.

24.     The "Appraisal Fee" charged by Defendants is listed on the Loan Estimate document, along with myriad data and amounts under sections titled, "Loan terms," "Projected Payments," and "Costs at Closing."

25.     The Loan Estimate is a form document that displays "Ally Bank Corp." at the top, followed by the address for its corporate headquarters.  It also lists the date issued, the Loan ID Number, the name of the applicant and the purchase price and address of the property.

26.     Third-party services are listed under the "Costs at Closing" section of the Loan Estimate. There, the "Appraisal Fee" is listed under the "Services You Cannot Shop For."

27.     This section of the Loan Estimate, providing the third-party services that applicants "Can" and "Cannot Shop For" does not include a "Management Fee." There is no "Management Fee" listed anywhere on the Loan Estimate.

28.     To the right of "Appraisal Fee," Ally Bank provides a specific dollar amount, representing the cost of the Appraisal Fee that the customer "Cannot Shop For":

| B. Services You Cannot Shop For | $597 |
|---|---|
| Appraisal Fee | $550 |
| Credit Report | $33 |
| Flood Certification | $14 |

| C. Services You Can Shop For | $1,298 |
|---|---|
| Title - eRecording fee | $20 |
| Title - Examination | $350 |
| Title - Lender's title insurance | $150 |
| Title - Pest inspection | $75 |
| Title - Pre-closing gap | $50 |
| Title - Search fee | $265 |
| Title - Settlement fee | $138 |
| Title - Shipping fee | $45 |
| Title - Survey fee | $175 |
| Title - Wire transfer fee | $30 |

29.     Defendants charge a uniform "Appraisal Fee" of $550.00 to all mortgage applicants.

30.     As admitted by Ally, the $550.00 Fee is the maximum of the average amount a home appraisal can cost:

**What does a home appraisal cost?**

Home appraisals aren't free, and it's important to note that you (the buyer) — not the seller — are responsible for paying the appraisal fee. The average cost is between $300 and $550 for a single-family home, so be sure to factor that price into your homebuying and closing cost budget.

31.     In order to obtain the loan, Defendants require customers to pay the "Appraisal Fee" that is listed on the Loan Estimate.

8

32.     As stated on "Ally Home FAQs" web page:

▼ **Does Ally require a home appraisal?**

Yes. When it's time for you to get a home appraisal, we'll introduce you to the appraisal company and set up an appointment.

33.     Under the "Additional Information About This Loan" section of the Loan Estimate, Ally Bank reiterates its authority to "order an appraisal to determine the property's value and charge you for this appraisal":

**Other Considerations**

Appraisal

We may order an appraisal to determine the property's value and charge you for this appraisal. We will promptly give you a copy of any appraisal, even if your loan does not close. You can pay for an additional appraisal for your own use at your own cost.

34.     The Loan Estimate further promises that Ally Bank "will promptly give you a copy of any appraisal, even if your loan does not close."

35.     On Ally Bank's web page view of a customer's personalized Loan Estimate, it lists an annotation next to the third-party services that include the Appraisal Fee (and don't include a "Management Fee"), stating: "[t]hese third-party services are required in order to fund your loan":

ⓢ Third-party services

These third-party services are required in order to fund your loan. At this point, the title costs are only estimates. We'll update these figures once we receive the final amounts from the title provider you select.

36.     An applicant can "lock in" the mortgage rate with Ally Bank by paying the Appraisal Fee listed on the Loan Estimate soon after obtaining preapproval.

37.     To "lock in" the rate, the customer can go his "Overview" web page and click on the "task" that allows him to "Pay your deposit and lock your rate."

38.     He is then directed to the "Pay your deposit and lock your rate" web page, where Ally Bank asks the customer to pay a deposit in an amount that is identical to the amount of the Appraisal Fee listed on the Loan Estimate.

39.     Before paying the deposit, the customer is told that the deposit "kicks off the appraisal process and lets you lock in your rate. If the appraisal costs less than [the quoted amount], we'll refund the difference." (emphasis added).

40.     On the same web page, Ally Bank promises: "We'll reach out to schedule your appraisal, which is when someone visits the property to determine its value, if an interior inspection is needed. You'll see Better.com, our mortgage partner, listed for this transaction on your card statement."

41.     After paying the Appraisal Fee, the web page updates to show the date, time, and amount of the payment made to Ally Bank.

**B. Plaintiff's Experience**

42.     Plaintiff is a Captain in the United States Army Reserve, serving as a "Judge Advocate," or "Army JAG."

43.     Plaintiff received notice on or around September 2, 2020 that he would start a mobilization at Fort Sill, Oklahoma on October 1, 2020, requiring him to move his family from California to Oklahoma in service to the United States.

44.     With little time, Plaintiff conducted extensive, remote and in-person research and identified two properties in Lawton, Oklahoma that would meet his family's needs during his mobilization at Fort Sill.

45.     Plaintiff applied to Ally Bank for his mortgage because of their promises regarding quick and efficient online loan application and closing process, as alleged herein.

**i.    Appraisal Fees**

46.     Using Ally's online preapproval and application process, Plaintiff applied for mortgages on two different homes in Lawton, Oklahoma ("Lawton Home I" and "Lawton Home II"). While he ended up buying the second home, he contracted with Defendants and paid for the lender appraisals of both homes, as it was required during the loan application process.

47.     For both loan applications, Plaintiff received a Loan Estimate from Ally Bank after being preapproved.  Both Loan Estimates stated that the Appraisal Fee was $550.00, the highest an appraisal can cost, according to Ally Bank.

48.     Both of Plaintiff's loan applications were signed by a loan originator employed by Better Mortgage.

49.     Also for both, Plaintiff was directed to the "Pay your deposit and lock your rate" page, with language promising that the deposit "kicks off the appraisal process and lets you lock in your rate. If the appraisal costs less than $550, we'll refund the difference." (emphasis added).

50.     On September 15, 2020, Plaintiff paid the Appraisal Fee ($550.00) to "lock in his rate" and pay for the appraisal for Lawton Home I.

51.     When he paid the Appraisal Fee, Ally Bank informed him: "You'll see Better.com, our mortgage partner, listed for this transaction on your card statement."

11

52.     The appraisal of Lawton Home I took place on September 16, 2020.

53.     Because the seller couldn't accommodate an early move-in date for Plaintiff and his family, Plaintiff did not ultimately purchase Lawton Home I. Plaintiff ended his loan application as to Lawton Home I on or around September 18, 2020.

54.     On September 21, 2020, Plaintiff received a $25.00 refund from "Better.com" for the appraisal of Lawton Home I.

55.     Ally Bank did not offer to or affirmatively provide Plaintiff with an invoice for the appraisal of Lawton Home I.

56.     On or around September 18, 2020, Plaintiff paid the Appraisal Fee ($550.00) to "lock in his rate" and schedule the appraisal for Lawton Home II.

57.     When he paid the Appraisal Fee, Ally Bank informed him: "You'll see Better.com, our mortgage partner, listed for this transaction on your card statement."

58.     However, the appraisal of Lawton Home II did not take place until on or around November 3, 2020.

59.     As the Plaintiff experienced in his interactions with Ally Bank regarding the Lawton Home II appraisal, Ally regularly refers to its own "Appraisal Department" as the entity responsible for appraisals and avoids disclosing that appraisals are being handled by a third party—rather, it instead refers to its own, *internal* "Appraisal Department."

60.     On November 5, 2020, Plaintiff received a $25.00 refund from "Better.com" for the appraisal of Lawton Home II, the exact amount of the refund from "Better.com" for the appraisal of Lawton Home I.

61.     Plaintiff continued through the mortgage application process with Defendants, was approved, and ultimately purchased Lawton Home II.

### ii.   Appraisal Invoices

62.     Ally Bank and Better Mortgage do not affirmatively provide invoices to customers for the lender appraisal, paid-for by the customer.

63.     Because Defendants did not provide Plaintiff with invoices for the appraisals on the two Lawton Homes, he contacted Ally Bank to obtain the invoices.

64.     On or around November 13, 2020, Plaintiff called his "closing expert" at Ally Bank, to request the invoices for the two appraisal fees.

65.     The closing expert stated that, *as a matter of policy*, Ally Bank does not provide the appraiser's invoice to customers. When Plaintiff pressed him, he stated that he would contact his supervisor about Plaintiff's request.

66.     On November 16, 2020, the Ally Bank closing expert emailed Plaintiff with a copy of the form invoice just for the appraisal of the Lawton Home I. A copy of the invoice is attached hereto as Exhibit A.

67.     Upon reviewing this invoice, Plaintiff first learned that the appraisal was not conducted by Ally's internal "Appraisal Department" but rather, a third-party provider, US Real Estate Services, Inc. ("USRES").

68.     Because Ally had not provided both invoices, Plaintiff again called the Ally Bank closing expert on or around November 20, 2020, requesting the invoice for the appraisal of the Lawton Home II.

69.     And again, the closing specialist stated that it was Ally Bank's policy to refuse to provide appraiser invoices to customers who had purchased appraisals through Ally. Plaintiff again refused to accept this response, and the closing expert stated that he would contact his supervisor regarding Plaintiff's request.

70.     On November 23, 2020, the closing expert emailed Plaintiff with a copy of the invoice for the appraisal of the Lawton Home II. A copy of the form invoice is attached hereto as Exhibit B.

71.     The form invoices for the appraisals of both Lawton Homes were issued by USRES. Before receiving the invoices, Plaintiff did not know that USRES had conducted the appraisals, and it was disclosed only after Plaintiff pressed Ally to go against its own policy of not sharing appraisal invoices.

72.     USRES is an appraisal management company, headquartered in Lake Forest, California. It describes itself on its website as an "industry leader in Appraisals, BPOs, Rental Analysis and REO Disposition services." https://www.usres.com.

73.     Both USRES form invoices are addressed to Better Mortgage as a "General User," listing the address for its corporate headquarters in New York, NY. They also name Ally Bank as the "Client on Report."

74.     Both USRES form invoices list Plaintiff as the "Borrower."

75.     Both USRES form invoices list two separate fees: an "Appraisers Fee" and a "Management Fee."

76.     The "Management Fee" listed on the USRES invoices is a third-party fee that had never before been disclosed to Plaintiff.

77.     Both USRES form invoices list two separate fees: an "Appraisers Fee" and a "Management Fee." The "Management Fee" is described on both invoices as covering tasks and services not related to the actual appraisal, including "responsibilities and duties of administering and tracking the appraisal process, ensuring proper selection of appraiser, acting as liaison between appraiser and client, performing a quality audit of every report, and delivering a final copy."

78.     For both Lawton Homes, the total amount due on the USRES form invoice was $525.00.

79.     This uniformity is not reflected by the amounts charged to Plaintiff for the "Appraisers Fee" and the "Management Fee" on each invoice, however.

80.     The USRES form invoice for Lawton Home I charged $325.00 for the "Appraisers Fee" and $200.00 for the "Management Fee."

81.     The USRES form invoice for Lawton Home II charged $500.00 for the "Appraisers Fee" and $25.00 for the "Management Fee."

82.     Thus, the same company (USRES) charged vastly different amounts for the two appraisals that took place within roughly the same time period and in the same geographic location (Lawton, Oklahoma).

83.     The same company (USRES) likewise charged vastly different amounts for the "Management Fee."

84.     But, notwithstanding the wide differences in the individual charges, the sum of the amounts were identical, as were the refunds issued to Plaintiff. The total amount due on both USRES invoices was $525.00 and the refund was uniformly $25.00 for both properties.

15

## CLASS ACTION ALLEGATIONS

85.     Plaintiff brings this action individually and as a class action under Rule 23 of the

Utah Rules of Civil Procedure. Plaintiff proposes the following Class:

> All consumers who, during the applicable statute of limitations, paid an "Appraiser
> Fee" to Ally Bank and/or Better Mortgage in the process of applying for a mortgage
> loan from Ally Bank.

86.     Plaintiff reserves the right to modify or amend the definition of the Class as this

litigation proceeds.

87.     Excluded from the Class are Ally Bank, Better Mortgage, USRES, their parents,

subsidiaries, affiliates, officers and directors, any entity in which Ally Bank, Better Mortgage or

USRES has a controlling interest, all customers who make a timely election to be excluded,

governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their

immediate family members.

88.     This action is properly maintainable as a class action under Rule 23(a).

89.     The Class consists of thousands of members, such that joinder of all members is

impracticable. The identities of Class members are within the knowledge of and can be ascertained

only by resort to Defendants' records.

90.     There are questions of law and fact that are common to all members of the Class

related to Defendants' practice of uniformly charging an "Appraisal Fee" to mortgage applicants

that exceeds the cost of the actual appraisal, misleading applicants about the nature of the Appraisal

Fee, and improperly assessing an undisclosed third-party "Management Fee."

91.     The claims of Plaintiff are typical of the claims of the proposed Class because they involve substantially similar factual questions, are based on the same legal theories, and Plaintiff has no interests that are antagonistic to the interests of the members of the Class.

92.     Plaintiff is an adequate representative of the Class and has retained competent legal counsel experienced in class actions and complex litigation.

93.     The action is properly maintainable as a class action under Rule 23(b)(1) and (3)

94.     The questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, particularly because the focus of the litigation will be on Defendants' uniform conduct. The predominant questions of law and fact in this litigation include, but are not limited to the following:

- Whether Ally Bank and/or Better Mortgage improperly assessed "Management Fees";

- Whether Ally Bank and/or Better Mortgage failed to "refund the difference" between the amount of the initial Appraisal Fee and the actual appraisal cost;

- Whether Ally Bank and/or Better Mortgage have breached their contract with Plaintiff and Class Members;

- Whether Ally Bank's and/or Better Mortgage's representations and omissions about the Appraisal Fee and Management Fee are false, misleading, deceptive, or likely to deceive;

- Whether Ally Bank and/or Better Mortgage failed to disclose that members will be charged "Management Fees";

- Whether Ally Bank and/or Better Mortgage failed to disclose that the Appraisal Fee exceeds the actual cost of conducting the home appraisal;

- Whether Ally Bank and/or Better Mortgage were unjustly enriched by their practice of charging Appraisal Fees that exceed the actual cost of conducting the home appraisal;

- Whether Ally Bank and/or Better Mortgage breached the covenant of good faith and fair dealing imposed on them;

17

- Whether Ally Bank's and/or Better Mortgage's representations or omissions constitute a "deceptive act or practice" under the Utah Consumer Sales Practices Act, as alleged herein;

- Whether Plaintiff and members of the Class were damaged by Ally Bank's and Better Mortgage's conduct, and if so, the appropriate amount of damages; and

- Whether, because of Ally Bank's and Better Mortgage's misconduct, Plaintiff and members of the Class are entitled to equitable and declaratory relief, and, if so, the nature of such relief.

95.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of thousands of individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the common issues of the Class members to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Ally Bank and Better Mortgage, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Ally Bank's and Better Mortgage's misconduct will proceed without remedy. In addition, without a class action, it is likely that many members of the Class will remain unaware of Ally Bank's and Better Mortgage's conduct and the claims they may possess.

96.     It appears that other persons who fall within the definitions of the Class set forth above are not pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

97.     This proposed class action does not present any unique management difficulties.

18

**FIRST CLAIM FOR RELIEF**
### Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

98.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

99.    Plaintiff, individually and on behalf of the Class, asserts a common law claim for breach of contract, including breach of the implied covenant of good faith and fair dealing.

100.    Plaintiff and members of the Class contracted with Defendants to pay an Appraisal Fee to cover the cost of appraising specified property.

101.    As part of this contract, Plaintiff and Subclass Members paid the quoted Appraisal Fee.

102.    Further, as part of this contract, Defendants promise: "If the appraisal costs less than [the quoted amount], we'll refund the difference."

103.    Plaintiff's quoted Appraisal Fee was $550.00.

104.    In breach of this contract, Defendants charged Plaintiff and Class Members for costs that exceeded the actual cost of the appraisal, including an undisclosed third-party "Management Fee."

105.    No representation made by Defendants as part of the contract authorized Defendants to charge Plaintiff or Subclass Members for costs that exceeded the cost of the appraisal or for any costs or services encompassed by the "Management Fee" listed on the third-party appraisal management company's invoices.

19

106.    Indeed, Defendants actively hide this "Management Fee" from consumers through its policy of requiring its customers to affirmatively request the appraisal invoice, then when requested, refusing to provide the invoices.

107.    Plaintiff and Class Members never agreed to pay a "Management Fee" in their contracts with Defendants to pay for the appraisal.

108.    Plaintiff and Class Members solely agreed to pay for the costs of the appraisal.

109.    Under the contract with Defendants, Plaintiff was required to pay the actual appraisal fee for Lawton Home I, which was $325.00.

110.    Plaintiff initially paid $550.00 for the appraisal of the Lawton Home I.

111.    Defendants breached the contract by refunding $25.00 to Plaintiff, instead of the actual difference between what he paid and the cost of the appraisal: $225.00.

112.    Under the contract with Defendants, Plaintiff was required to pay the actual appraisal fee for Lawton Home II, which was $500.00.

113.    Plaintiff initially paid $550.00 for the appraisal of the Lawton Home II.

114.    Defendants breached the contract by refunding $25.00 to Plaintiff, instead of the actual difference between what he paid and the cost of the appraisal: $50.00.

115.    Under Utah law, the duty of good faith and fair dealing is implied in every contract; a violation of the covenant "gives rise to a claim for breach of contract." *PDQ Lube Ctr., Inc. v. Huber*, 949 P.2d 792, 797 (Utah Ct. App. 1997)

116.    This duty requires both parties to forbear from "intentionally or purposely do[ing] anything which will destroy or injure the other party's right to receive the fruits of the contract."

*Id.* Under its purview, parties' actions "must be consistent with the agreed common purpose and the justified expectations of the other party." *Id.* at 797-98.

117. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

118. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.

119. Defendants hid that they had included the "Management Fee" and costs unrelated to the actual appraisal in the "Appraisal Fee" that was charged to Plaintiff and Class Members, in breach of their duty to abstain from taking unfair advantage of Plaintiff and Class Members.

120. Defendants have breached the covenant of good faith and fair dealing through deceptively charging a "Management Fee" to Plaintiff and Class Members.

121. Defendants breach the covenant of good faith and fair dealing by maintaining a policy of not providing appraisal invoices to customers and affirmatively refusing to provide invoices upon request.

122. In these ways and others, Defendants have breached the covenant of good faith and fair dealing.

123. Plaintiff and Class members have performed all, or substantially all, of the obligations imposed on them by the contract.

124. Plaintiff and Class members have sustained damages as a result of Defendants' breach of the contract and breach of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

125. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

126. Plaintiff, individually and on behalf of the Class, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to the breach of contract claim and applies only if the parties' contract is deemed unenforceable for any reason. In such circumstances, unjust enrichment will dictate that Defendants disgorge all improper revenue tied to its deceptive Appraisal Fees and undisclosed third-party Management Fees.

127. Plaintiff and Class Members agreed to pay an Appraisal Fee to cover the cost of appraising identified property on which they sought a mortgage loan.

128. Defendants quoted an amount for the Appraisal Fee, listed on their Loan Estimates, and Plaintiff and Class Members paid the amount.

129. Before payment, Defendants stated: "If the appraisal costs less than [the quoted amount], we'll refund the difference."

130. Defendants refunded the difference between the amount paid by Plaintiff and Class Members and *the sum* of the Appraisal Fee and a hidden "Management Fee" that was neither disclosed before or after payment.

131. By means of Defendants' wrongful conduct, Defendants knowingly charged Plaintiff and Class Members with Management Fees that are undisclosed, unfair, unconscionable, and oppressive.

132.    As a direct outcome of Defendants' actions, Defendants have money in their hands that, in equity and good conscience, it should not be allowed to retain.

133.    Defendants knowingly received and retained wrongful benefits and funds from Plaintiff and Class Members. In doing so, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

134.    As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the members of the Class.

135.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

136.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to retain the benefits it received, and is still receiving, without justification, from the imposition of deceptive, hidden, and improper Management Fees on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

137.    The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class. Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds collected by Defendants. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendants traceable to Plaintiff and the members of the Class.

138.    Plaintiff and the members of the Class have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### Violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*
#### *(On Behalf of Plaintiff and the Class)*

139.  Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

140.  As corporations, Defendants are "suppliers" under the Utah Consumer Sales Practices Act ("UCSPA"). Utah Code Ann. § 13-11-3(6).

141.  Defendants' agreement with Plaintiff and Class Members to "refund the difference" between the upfront "Appraisal Fee" and the cost of the appraisal is a "consumer transaction" under the UCSPA. Utah Code Ann. § 13-11-3(2).

142.  Defendants' representation that Plaintiff and Class Members' payment is for an "Appraisal Fee" misrepresented that the payment is solely for cost of the appraisal of specified property.

143.  Defendants' representation that, "[i]f the appraisal costs less than $550, we'll refund the difference," misrepresented to Plaintiff and Class Members that they would refund the difference between the amount paid and the cost of the appraisal.

144.  Defendants' refund of $25.00 on both Lawton Homes misrepresented to Plaintiff that the Appraisal Fee for each Home was $525.00.

145.  The Appraisal Fee for Lawton Home I was $325.00.

146.  The Appraisal Fee for Lawton Home II was $500.00

147.  Defendants violated the UCSPA by affirmatively misrepresenting to Plaintiff and Class Members that that they were paying the "Appraisal Fee" for the Lawton Homes. Defendants'

misrepresentation deceived Plaintiff and Class Members and was of such a nature that Defendants could reasonably expect to have deceived Plaintiff and Class Members.

148. Defendants violated the UCSPA by deceptively omitting information about the "Management Fee" when seeking payment and promising to "refund the difference" between the paid amount and the cost of the appraisal. Defendants, thus, deceived Plaintiff and Class Members that they were paying solely for the cost of the appraisal of identified property. Defendants' deceptive omissions were of such a nature that they could reasonably expect to have deceived Plaintiff and Class Members.

149. Defendants violated the UCSPA by representing knowingly or with reason to know, that the quoted "Appraisal Fee" was for the cost of the appraisal, when it was for the cost of the appraisal and other undisclosed third-party costs. Utah Code Ann. § 13-11-4(2)(r); U.A.C. R152-11-5.

150. Defendants violated the UCSPA by misrepresenting knowingly, or with reason to know, to Plaintiff and Class Members that they were solely paying for an "Appraisal Fee" while failing to disclose that they were also paying for a hidden "Management Fee." *Id.*

151. Defendants misrepresented knowingly, or with reason to know, that the price of the Appraisal Fee for the Lawton Home I was $525.00, when it was $300.00.

152. Defendants misrepresented knowingly, or with reason to know, that the price of the Appraisal Fee for the Lawton Home II was $525.00, when it was $500.00.

153. Defendants' practice of requiring mortgage applicants to pay an "Appraisal Fee" that includes a hidden "Management Fee" is an "deceptive act or practice" under the UCSPA. Utah Code Ann. § 13-11-4(2).

154.    Defendants' practice of requiring mortgage applicants to pay an "Appraisal Fee" that includes a hidden "Management Fee" is an "unconscionable act or practices under the UCSPA. Utah Code Ann. § 13-11-5.

155.    Plaintiff and Class Members have suffered actual damages as a result of Defendants' violations of the UCSPA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment including the following:

a.    Certification for this matter to proceed as a class action;

b.    Designation of Plaintiff as Class Representative, and designation of the undersigned as Class Counsel;

c.    Restitution of monies paid for the "Management Fee";

d.    Actual damages in an amount according to proof;

e.    Pre- and post- judgment interest at the maximum rate permitted by applicable law;

f.    Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

g.    Attorneys' fees under the common fund doctrine and all other applicable law;

h.    Injunctive and declaratory relief prohibiting Defendant from engaging in the deceptive practices outlined herein and declaring such practices unlawful; and

i.    Such other relief as this Court deems just and proper

## TRIAL BY JURY IS DEMANDED

Pursuant to Rule 38 of the Utah Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues so triable.

## ELECTION OF DISCOVERY TIER

Pursuant to Rule 8(a) of the Utah Rules of Civil Procedure, Plaintiff states that the Class' claims for relief qualify for Tier 3 discovery as defined in Rule 26(c)(3) of the Utah Rules of Civil Procedure.

DATED this 22nd day of April, 2021.

MARSHALL OLSON & HULL, PC

BY:    /s/Trevor C. Lang_____
       JASON R. HULL
       TREVOR C. LANG

COHEN & MALAD, LLP
LYNN TOOPS
VESS MILLER
NATALIE LYONS
TYLER EWIGLEBEN

BRANSTETTER, STRANCH & JENNINGS, PLLC
J. GERARD STRANCH, IV

ATTORNEYS FOR PLAINTIFF AND
PROPOSED CLASS COUNSEL

27

# Exhibit A

# INVOICE

USRES, Inc.
25520 Commercentre Drive
Lake Forest, CA 92630
Phone: 949-598-9920
Fax:
Email:AppraisalScope@usres.com



US Real Estate Services

| INVOICE NUMBER |
| --- |
| 36428 |

| DATE |
| --- |
| 09/18/2020 |

| REFERENCE |
| --- |
| File #: 36428<br>Loan #: 1133691807<br>Reference #: -<br>Federal Tax ID: |

**To:**

General User
Better Mortgage
120 Broadway, 5th Floor
New York, NY 10271

**Client on Report:**

Ally Bank
440 South Church Street
Charlotte, NC, 28202

Telephone Number: 888-501-3186
Fax Number:
E-Mail: noreply@better.com

## Borrower Information

Borrower: Frits Van der Hoek
Address : 2518 Northeast Turtle Creek Drive
            Lawton, OK 73507

| FEES | AMOUNT |
| --- | --- |
| **Uniform Residential Appraisal FNMA 1004** | $525.00 |
| Our Management Fee includes responsibilities and duties of administering and tracking the   appraisal process, ensuring proper selection of appraiser, acting as liaison between appraiser and    client, performing a quality audit of every report, and delivering a final copy. Pursuant to certain   state disclosure requirements, the fee is broken down as:<br> **Appraisers Fee= $325.00, Management Fee= $200** | |

| PAYMENTS | AMOUNT |
| --- | --- |
| **Payment Status: Unpaid** | $0.00 |

| | TOTAL DUE | $525.00 |
| --- | --- | --- |

# Exhibit B

USRES, Inc.
25520 Commercentre Drive
Lake Forest, CA 92630
Phone: 949-598-9920
Fax:
Email: AppraisalScope@usres.com


US Real Estate Services

# INVOICE

| INVOICE NUMBER |
|---|
| 40136 |

| DATE |
|---|
| 11/02/2020 |

| REFERENCE |
|---|
| File #:  40136 |
| Loan #:  1450414541 |
| Reference #:  - |
| Federal Tax ID: |

**To:**
General User
Better Mortgage
120 Broadway, 5th Floor
New York, NY 10271

Telephone Number: 888-501-3186
Fax Number:
E-Mail: noreply@better.com

**Client on Report:**
Ally Bank
440 South Church Street
Charlotte, NC, 28202

## Borrower Information

Borrower: Frits Pieter van der Hoek
Address : 6808 Northwest Surreywood Circle
        Lawton, OK 73505

| FEES | AMOUNT |
|---|---|
| **Uniform Residential Appraisal FNMA 1004** | $525.00 |
| **Our Management Fee includes responsibilities and duties of administering and tracking the    appraisal process, ensuring proper selection of appraiser, acting as liaison between appraiser and    client, performing a quality audit of every report, and delivering a final copy. Pursuant to certain    state disclosure requirements, the fee is broken down as:** | |
| **Appraisers Fee= $500.00, Management Fee= $25** | |

| PAYMENTS | AMOUNT |
|---|---|
| **Payment Status: Unpaid** | $0.00 |

|  | **TOTAL DUE** | $525.00 |
|---|---|---|